UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENRIQUE DIAZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>R. A. KESSLER, et al.,<br><br>　　　　　Defendants. | Case No. 14-02145 EJD (PR)<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT PROCEEDINGS; STAYING CASE; INSTRUCTIONS TO CLERK**<br><br>(Docket No. 54) |

Plaintiff, a California prisoner proceeding pro se, filed the instant civil rights action pursuant to 42 U.S.C. § 1983 against prison officials at Salinas Valley State Prison ("SVSP"). Finding the complaint stated cognizable claims, the Court ordered service upon Defendants. (Docket No. 8.) Defendants filed a motion to dismiss, which the Court granted in part with respect to the claims against Defendants D. Ambriz, B. Hedrick, M. Ross, J. Hughes, and L. M. Pennisi who were then dismissed from this action. (Docket No. 49.) The Court ordered remaining Defendants A. Tankersley, S. Nunez, P. Sullivan, and R. A. Kessler to file a motion for summary judgment on the remaining claim, *i.e.*, the violation of Plaintiff's First Amendment right to the free exercise of religion. (Id.)

Defendants filed a motion for summary judgment asserting that Plaintiff cannot prove that they impeded the free exercise of his religion and that they are entitled to

qualified immunity, among other grounds. (Docket No. 54, hereafter "Mot.") Plaintiff filed an opposition, (Docket No. 62), and Defendants filed a reply, (Docket No. 63). For the reasons discussed below, the motion is **DENIED**.

## DISCUSSION

### I. Statement of Facts

The only facts that are undisputed are that on June 18, 2013, Defendants Tankersley and Nunez came and removed Plaintiff during the middle of a Jewish service at SVSP. Plaintiff was assigned to Building A4 at the time.

According to Defendants, SVSP officials received information regarding a possible threat to the safety of one or more correctional officers in Facility A on June 18, 2013. (Kessler Decl. ¶ 3, Docket No. 57.) On the same day, a threat assessment procedure was conducted in Building A4 of SVSP which houses up to 200 inmates. (Id. at ¶¶ 6-7.) As per normal prison procedure, inmates were confined in their cells, and those inmates who were assigned to, but not present in, Building A4 were methodically located and returned to A4. (Id. at ¶ 7.) Plaintiff was assigned to A4, and had to be retrieved from Jewish services and returned to his cell as part of the threat assessment. (Id. at ¶ 8.) Plaintiff was one of over 100 inmates who were located and retrieved on June 18, 2013, as part of the threat assessment. (Id.) It was determined that a threat did not exist, and the building was returned to regular program at that time. (Id. at ¶ 9.) Because the threat assessment was completed in less than 24 hours, no official report was created. (Id.)

According to Plaintiff, he was the only inmate out of A4 who was removed from Jewish services that day. (Diaz Decl.. Opp. Ex. B.) Plaintiff observed that he was the only inmate taken in handcuffs back to his unit and that all the other inmates from the same unit remained in the recreational yard. (Id.) Plaintiff states that he witnessed no cells being searched, no inmates being interviewed or questioned, nothing "out of the ordinary," and that inmates "went and came in from the unit to the yard without any impedement [*sic*] at

2

anytime that day of June 18[,] 2013." (Id.)

## II. Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Cattrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Id. at 323.

3

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631.  It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id.  If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A.   Free Exercise of Religion

Defendants argue that they are entitled to summary judgment on the merits because Plaintiff has failed to show that they impeded the free exercise of his religion.

In order to establish a free exercise violation, a prisoner must show a defendant burdened the practice of his religion without any justification reasonably related to legitimate penological interests. See Shakur v. Schriro, 514 F.3d 878, 883-84 (9th Cir. 2008).  A prisoner is not required to objectively show that a central tenet of his faith is burdened by a prison regulation to raise a viable claim under the Free Exercise Clause. Id. at 884-85.  Rather, the sincerity test of whether the prisoner's belief is "sincerely held" and "rooted in religious belief" determines whether the Free Exercise Clause applies. Id. (finding district court impermissibly focused on whether consuming Halal meat is required of Muslims as a central tenet of Islam, rather than on whether plaintiff sincerely believed eating kosher meat is consistent with his faith).  The prisoner must show that the religious practice at issue satisfies two criteria:  (1) the proffered belief must be sincerely held and (2) the claim must be rooted in religious belief, not in purely secular philosophical

4

concerns. Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994) (cited with approval in Shakur, 514 F.3d at 884). A prison regulation that impinges on an inmate's First Amendment rights is valid if it is reasonably related to legitimate penological interests. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)); see, e.g., Anderson v. Angelone, 123 F.3d 1197, 1198 (9th Cir. 1997) (finding legitimate penological interest for regulation prohibiting inmate-led religious activities where state contended that the regulation addressed legitimate security concerns that inmate-led religious services could be a cover for unlawful activity and that an inmate leading religious services could inflame or unduly influence other prisoners); cf. Mayweathers v. Newland, 258 F.3d 930, 937-38 (9th Cir. 2001) (finding that policy of disciplining inmates when they miss a work assignment to attend Jumu'ah (Sabbath) services interfered with conduct mandated by Muslim faith and was not reasonably related to legitimate penological interests).

There is no issue as to whether the practice of Plaintiff's religion was burdened by Defendants' alleged actions. Rather, Defendants argue that they had a legitimate penological interest in preserving the safety and security of the prison, staff, and inmates. (Mot. at 5, citing Mauro v. Arpaio, 188 F.3d 1054, 1059 (9th Cir. 1999), and Procunier v. Martinez, 416 U.S. 396, 413 (1974) (holding that legitimate penological interest include "security, order, and rehabilitation.") In support of their motion, Defendants provide the sole declaration of Defendant Kessler. (Docket No. 57.) According to Defendant Kessler, who was personally involved in the events of that day and thereby has personal knowledge of those events, information was received regarding a possible threat of harm to one or more SVSP correctional officers on June 18, 2013. (Kessler Decl. ¶¶ 2-3.) According to Defendant Kessler, all threats are investigated for staff safety and institutional security through a threat assessment procedure. (Id. at ¶ 4.) During a threat assessment, inmates in the affected area will be confined to their cells and inmates from the affected area not present, whether due to medical appointments, work assignments, chapel, yard or other

5

reasons, will be located and returned to their cells. (Id.) While inmates are being located and returned to their cells, staff are also conducting interviews with relevant individuals and conducting searches of affected areas. (Id.) Prison staff has 24 hours to complete the threat assessment. (Id. at ¶ 5.) If more time is necessary or if a threat is confirmed, the affected unit goes into a "modified program" which is documented by a "Program Status Report" ("PSR"). (Id.) Pursuant to these procedures, Defendant Kessler states that he oversaw the threat assessment conducted in Building A4 of SVSP on June 18, 2013. (Id. at ¶ 6.) Plaintiff was assigned to A4 but was away at chapel. (Id. at ¶ 8.) Along with more than 100 inmates assigned to A4, Plaintiff was retrieved and returned to his cell as part of the threat assessment procedure. (Id. at ¶¶ 8, 10.) Furthermore, due to the limited amount of staff available, the process of retrieval and confinement of inmates to their cells could not be accomplished all at once, but was methodical and piecemeal. (Id. at ¶ 7.) Accordingly, Plaintiff's return to his cell occurred after a number of other inmates had already been retrieved and confined and before some others were retrieved and confined. (Id. at ¶ 8.) The threat assessment was completed relatively quickly, i.e., less than 24 hours, and the building was returned to regular program. (Id. at ¶ 9.) Defendant Kessler asserts that Plaintiff was not singled out for this treatment, nor was his return to his cell for any reason other than the security procedure for threat assessment. (Id. at ¶ 10.)

In opposition, Plaintiff repeats his claim that Defendants burdened the practice of his religion, i.e., by disrupting prayer during Jewish service, without any justification reasonably related to a legitimate penological interest because there was no actual threat. (Opp. at 1-2.) Furthermore, Plaintiff claims that he was the only inmate residing in A4 who was removed from Jewish services and that he was treated differently from other inmates housed in A4. (Id. at 3.) In support of his argument, Plaintiff submits the declaration of several inmates who were present at the same Jewish service who attest to witnessing Defendants interrupting the service and ordering Plaintiff to step out, and that Plaintiff was the only inmate they came for. (Opp., Exs. A, C.) Plaintiff asserts that

6

"minutes later" from being removed from service, he was ordered to report to work. (Opp. at 3.) Plaintiff argues that Defendants admit that there is no documentation to support their assertion that a threat assessment took place on June 18, 2013. (Id. at 3-5.) Plaintiff argues, therefore, that he has proven all the elements to show that his right to the free exercise of religion was violated. (Id. at 6.)

In reply, Defendants assert that they have established through the testimony of the individual who "initiated, directed and participated in a security threat evaluation on June 18, 2013 (and thus has direct knowledge thereof) that Plaintiff's removal from Jewish services on that date was in furtherance of a compelling penological interest" and that "[f]urther corroborating evidence is not necessary." (Reply at 2.) Furthermore, Defendants assert that the fact that Plaintiff did not observe any other inmate being returned to their cell or searches and interviews being conducted does no establish otherwise because the retrieval of inmates and their confinement was piecemeal and the security threat was resolved relatively quickly. (Id. at 2-3.) Lastly, Defendants argue that Plaintiff's assertion that there was never a threat is not accurate because a threat was "perceived" and then assessed, even though it was determined to be without merit. (Id. at 3.)

Having reviewed the submitted briefs and documents in support and viewing the evidence in the light most favorable to Plaintiff, the Court finds that Defendants have failed to demonstrate the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323. In support of their argument that there existed a legitimate penological interest in removing Plaintiff from Jewish service, Defendants have submitted a single declaration of a Defendant who claims to have personal knowledge of the events from that day. Whether or not Defendants were acting under a threat assessment procedures and therefore had a legitimate penological interest is a material fact. Without other corroborating evidence, e.g., declarations from other participating witnesses or independent supporting documentation, Defendants have reduced the issue to a matter of

7

credibility: Defendants Kessler's credibility versus that of Plaintiff.  However, the Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact.  See T.W. Elec. Serv., Inc., 809 F.2d at 630.  The evidence must be viewed in the light most favorable to Plaintiff, as the non-moving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to him.  See id. at 631.  Here, the inference from Plaintiff's observations and the lack of documentation and corroborating witnesses to support Defendant Kessler's version of events is that there was no legitimate penological interest being served in removing Plaintiff from Jewish service on June 18, 2013.  Furthermore, it is undisputed that Defendants Tankersley and Nunez were the officers who removed Plaintiff from Jewish service, and yet there is no declaration from them attesting to the fact they did so in accordance with a threat assessment procedure or under orders from Defendant Kessler or other superior.  The Court also notes that with his opposition, Plaintiff submitted a copy of a response he received from the litigation coordinator at SVSP to his request for documents in connection with this action.  (Opp., Ex. E.)  The response asserts official-information privilege, and denies the request based on the assertion that the disclosure of information regarding confidential policies and procedures relative to threat assessments would put individuals' lives at risk.  (Id. at 4.)  Be that as it may, Defendant Kessler could have submitted such confidential information or other supporting documentation to the Court under seal for *in camera* review to support his defense that Plaintiff was removed from Jewish service in the interest of prison security.  He did not.

Based on the evidence presented, Defendants have failed to show the absence of a genuine issue of material fact with respect to Plaintiff's free exercise of religion claim because there is a genuine dispute as to whether or not Plaintiff's removal from Jewish service was for a legitimate penological interest, which is a material fact.  See Celotex Corp., 477 U.S. at 323.  Accordingly, Defendants are not entitled to judgment as a matter of law.

### B. Qualified Immunity

Defendants assert in the alternative that they are entitled to qualified immunity which bars liability. (Mot. at 6.)

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law;'" defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991).

The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. See Pearson v. Callahan, 555 U.S. 223, 236 (2009) (noting that while the Saucier sequence is often appropriate and beneficial, it is no longer mandatory). "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," and must, as in other cases, view the evidence in the light most favorable to the non-movant. See Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014).

Viewing the evidence in the light most favorable to Plaintiff, the Court is not persuaded that Defendants are entitled to qualified immunity. Under the first prong, Plaintiff has alleged sufficient facts showing a constitutional violation, i.e., the unjustified burden on the practice of his religion. Under the second prong, it cannot be said that a reasonable officer would have understood that it was lawful to burden the practice of Plaintiff's religion by removing him from Jewish prayer without a legitimate penological

9

interest. As discussed above, Defendants offer only a single declaration without objective evidence that Plaintiff was removed from Jewish service in the interest of preserving the safety and security of the prison, staff, and inmates. See supra at 8. Accordingly, the motion based on qualified immunity is DENIED.

### III.    Referring Case to Settlement Proceedings

The Court has established a Pro Se Prisoner Settlement Program under which certain prisoner civil rights cases may be referred to a neutral Magistrate Judge for settlement. In light of the existence of a triable issue of fact as to whether Defendants violated Plaintiff's Eighth Amendment rights, the Court finds the instant matter suitable for settlement proceedings. Accordingly, the instant action will be referred to a neutral Magistrate Judge for mediation under the Pro Se Prisoner Settlement Program.

### CONCLUSION

For the reasons stated above,

1.    Defendants A. Tankersley, S. Nunez, P. Sullivan, and R. A. Kessler's motion for summary judgment, (Docket No. 54), is **DENIED**.

2.    The instant case is REFERRED to Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the claims in this action, as described above. The proceedings shall take place **within ninety (90) days** of the filing date of this order. Judge Vadas shall coordinate a time and date for a settlement conference with all interested parties or their representatives and, within ten (10) days after the conclusion of the settlement proceedings, file with the court a report regarding the prisoner settlement proceedings.

Other than the settlement proceedings ordered herein, and any matters Magistrate Judge Vadas deems necessary to conduct such proceedings, this action is hereby STAYED until further order by the court following the resolution of the settlement proceedings. The Clerk shall ADMINISTRATIVELY CLOSE this action until further order of the court.

The Clerk shall mail a copy of the court file, including a copy of this order, to Magistrate Judge Vadas in Eureka, California.

This order terminates Docket No. 54.

**IT IS SO ORDERED.**

Dated: 3/10/2017

EDWARD J. DAVILA
United States District Judge

Order Denying MSJ; Referring to PSP
PRO-SE\EJD\CR.14\02145Diaz_msj-deny.vadas

11